UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABCDE OPERATING, LLC,

        Plaintiff,

vs.

        Case No. 08-CV-14908

        HON. GEORGE CARAM STEEH

CITY OF DETROIT,

        Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DOC. # 7], DENYING PLAINTIFF'S MOTION TO AMEND [DOC. # 18], AND DENYING MOTION TO INTERVENE [DOC. # 11]

Plaintiff ABCDE Operating, LLC ("ABCDE"), doing business as The Penthouse Club ("Penthouse"), filed this lawsuit seeking to enjoin enforcement of defendant's "temporary moratorium" which currently prevents plaintiff from obtaining licenses and permits necessary to offer "adult entertainment" in the City of Detroit.

### FACTUAL BACKGROUND

A Group D cabaret is defined under the Detroit City Code as "an establishment open to the public which sells or serves alcoholic beverages with or without food," and provides adult entertainment. § 5-2-1. Under Michigan law, the Michigan Liquor Control Commission ("MLCC") must approve the issuance or transfer of all liquor licenses. MCL 436.1501. In order to serve liquor at an establishment presenting dancing, entertainment or topless entertainment, a party must also obtain an "activity permit" from the MLCC. Where a party requests the issuance or transfer of an MLCC

activity permit, MCL 436.1916(6) requires approval of the local police department and the local legislative body, in this case the Detroit City Council.

On January 31, 2007, Penthouse sought approval from the MLCC for transfer in ownership of a Class C License with Sunday Sales, Entertainment and Topless Activity Permits from S.A. Restaurants to Penthouse.  On March 2, 2007, MLCC transmitted a Local Approval Notice to the City Council for the City of Detroit, in compliance with MCL § 436.1916(10)(b).  The Local Approval Notice was forwarded by the City Council to the Law Department, the Building & Safety Engineering Department, that Department's Business License Center, and to the Planning Commission.

Penthouse was required to arrange for and pay for inspections and issuance of permits by the Building & Safety Engineering Department, the Plumbing Department, the Fire Department, the Health Department, and the Liquor License Unit of the Detroit Police Department.  The various City Departments did not complete their inspections and issue permits necessary for approval by City Council of the proposed transfer for nearly a year.

On January 16, 2008, Penthouse filed an application for a Group "D" Adult Cabaret license with the City's Consumers Affairs Department, seeking to provide "adult entertainment" pursuant to § 5-2-21 of the Detroit City Code.  On January 17, 2008, the Mayor issued Executive Order 2008-1, which established a temporary moratorium on new and pending applications for adult uses.  The Executive Order provided that "all pending zoning applications for a new adult use, or for the expansion of a current adult use, shall be held in abeyance for a period of one hundred twenty (120) days." (Referred to as "zoning moratorium").  The Executive Order was extended several

times, most recently on January 29, 2009, when Mayor Cockrel issued Executive Order 2009-1, extending the zoning moratorium to May 30, 2009.  Because the Court has not been advised otherwise, it is assumed that the zoning moratorium was extended again and is still in effect.

On November 28, 2007, the City's Law Department requested that City Council pass a temporary moratorium on consideration of petitions for MLCC activity permits for nonconforming uses.  (Referred to as "permit moratorium").  The permit moratorium applies to all MLCC activity permits and all cabarets, including those not presenting adult entertainment.  It does not apply to activity permits for conforming uses.  The first permit moratorium was passed on February 5, 2008, and on May 26, 2009 the City Council extended the permit moratorium to September 30, 2009.  The permit moratorium is the one at issue in this case.

The temporary permit moratorium approved by City Council on February 5, 2008 states that it was instituted "to provide the Body with additional time to review the final procedures and criteria regarding MLCC activity permits and hold a hearing".  The moratorium also provides that City Council will have six months from the adoption of an amended zoning ordinance to act on Penthouse's application:

> Within six (6) months of the Petitioner's application for a Group "A" Cabaret or Group "D" Adult Cabaret business license or within six (6) months of the adoption of the resolution of the MLCC Procedure and Criteria, whichever is later, City Council shall take action to approve or disapprove such MLCC petitions received prior to the enactment of this resolution.

The City describes the creation of a working group composed of members of the City Planning Commission, its Law Department, the City Council Research and Analysis

3

Division, the Police Department, and the Building and Safety Engineering Department's Business License Center, which has met numerous times since June 2007 to propose appropriate changes. City Council was supposed to vote on the new procedures and criteria on July 27, 2009, but this Court has not been advised of the outcome of that vote, or if such vote took place.

On February 6, 2008, the City issued a Temporary Occupancy Permit to Penthouse, and MLCC approved the management agreement allowing Penthouse to do business under the authority of S.A. Restaurants, Inc.'s License and Permits. Penthouse began operating pursuant to that agreement on March 1, 2008, and continues to operate today.

In its motion for preliminary injunction Penthouse seeks an order enjoining the City from enforcing the moratorium and requiring the City to process Penthouse's applications for a transfer of liquor license and permit, and cabaret license, within seven days.

## STANDARD FOR PRELIMINARY INJUNCTION

The decision of whether or not to issue a preliminary injunction lies within the discretion of the district court. CSX Transp., Inc. v. Tennessee State Bd. of Equalization, 964 F.2d 548, 552 (6th Cir. 1992). In determining whether to grant or deny an injunction, the district court is required to consider four factors:

1. whether the movant is likely to prevail on the merits;
2. whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction;
3. whether a preliminary injunction would cause substantial harm to others; and
4. whether a preliminary injunction would be in the public interest.

Nightclubs, Inc. v. City of Paducah, 202 F.3d 884, 888 (6th Cir. 2000). The foregoing factors should be balanced. In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985).

A plaintiff must always show irreparable harm before a preliminary injunction may issue. Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 104 (6th Cir. 1982). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Sampson v. Murray, 415 U.S. 61, 88 (1974) (citations omitted). When First Amendment rights are implicated, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because . . . the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." Nightclubs, 202 F.3d at 888.

## ANALYSIS

I. Prior Restraint

Plaintiff challenges the temporary permit moratorium as an unconstitutional prior restraint on freedom of expression, both on its face and as applied. The moratorium has delayed a decision on plaintiff's requests to transfer permits since March 2, 2007. While plaintiff is operating under a temporary occupancy permit since March 1, 2008, it has not been able to complete the transfer of licenses from S.A. Restaurants to itself.

It is well established that non-obscene "adult entertainment", which conveys a message of eroticism, is protected by the First Amendment. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 65 (1981). A "prior restraint" exists when one is required to obtain a permit from the government in order to exercise a First Amendment right.

Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee, 274 F.3d 377, 400 (6th Cir. 2001) (hereinafter "Deja Vu I").  A prior restraint carries a heavy presumption against its validity, and is presumed to be unconstitutional.  Id. at 391.  Plaintiff argues that the temporary permit moratorium in this case prevents applicants, like itself, from obtaining permission to offer adult entertainment by refusing to consider applications for permits for all nonconforming uses.

     The permit moratorium applies to all MLCC liquor licenses and activity permits relating to nonconforming uses.  The City argues that the moratorium was passed to allow sufficient time to revise the City's Procedures and Criteria relating to MLCC activity permits for nonconforming uses, which in turn were passed to address the negative secondary effects of adult entertainment, rather than the expression itself.  Content-neutral regulations related to adult entertainment are evaluated as "time, place and manner" regulations, and, according to the City, so should the moratorium in this case.  Such regulations will be upheld if (1) they are designed to serve a substantial government interest; (2) are narrowly tailored to serve a significant government interest; and (3) reasonable alternative avenues of communication remain available.  City of Los Angeles v. Alameda Books, 535 U.S. 425, 122 S.Ct. 670, 1734 (2002).

     The permit moratorium in this case applies to businesses applying for any kind of MLCC activity permit, and should be held to the "time, place and manner" standard.  The moratorium was passed to restrict the secondary effects of nonconforming businesses.  More specifically, the moratorium was passed so the City Council could evaluate and revise its Procedures and Criteria, which are used to restrict the

secondary effects of nonconforming businesses. It has been recognized that cities have a legitimate interest in eliminating nonconforming uses. <u>Outdoor Systems, Inc. v. City of Mesa</u>, 997 F.2d 604, 616 (9th Cir. 1993) (city sign codes did not violate First Amendment protection of commercial speech).

Second, the moratorium is narrowly tailored because without it, the City would have to evaluate MLCC activity permit requests without the benefit of revised Procedures and Criteria, which are needed to effectively address the negative secondary effects associated with such non-conforming uses. To show that a regulation is "narrowly tailored," the government need only show that a substantial governmental interest would be achieved less effectively without the regulation. <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 799-800 (1989). In this case, City Council is in the process of revising its zoning ordinances to make them constitutional - an undertaking that is taking an absurdly long period of time. As part of the revision process, the City Council determined it should revise its Procedures and Criteria. City Council's interest in making sure its zoning ordinances, and procedures thereunder, are constitutional is a legitimate one. This goal would be achieved less effectively without imposing a moratorium.

Third, the moratorium leaves reasonable alternative avenues of communication. The moratorium does not apply to any transfer requests in conforming locations, so any petition to transfer a topless activity permit outside the Central Business District would not be barred. The moratorium also does not apply to adult Group E cabarets, where no alcohol is served, because no MLCC activity permit would be required. The moratorium bars only the sale of alcohol in certain locations, and does not bar adult

7

entertainment as such. The Court also notes that the plaintiffs in this case are operating under a Temporary Occupancy Permit, and are fully exercising their First Amendment rights during the pendency of the temporary moratorium.

When evaluated as a First Amendment case, the likelihood of success on the merits is not sufficient to support entry of a preliminary injunction. This is true even though the Court finds the City's conduct in this case abhorrent. The Procedures and Criteria at issue were passed by City Council resolution on August 14, 2003, for the approval or disapproval of MLCC activity permits. The repeated renewal of the permit moratorium, passed to give City Council time to revise its Procedures and Criteria, clearly prevents plaintiff, and others like it, from achieving any finality in their business dealings. However, the way in which the case has been presented to the Court does not provide a basis for granting injunctive relief.

Plaintiff's motion for preliminary injunction based on First Amendment prior restraint grounds is DENIED.

II. Motion to Amend

After oral argument was held before the Court, the parties supplemented their pleadings to address substantive due process. In the context of zoning regulations, a plaintiff will have a substantive due process claim if they establish a constitutionally protected property or liberty interest, which has been deprived through arbitrary and capricious action. Silver v. Franklin Township Bd. Of Zoning Appeals, 966 F.2d 1031, 1036 (6th Cir. 1992). In this case, S.A. Restaurants is the holder of the state liquor license, topless activity permit and City adult cabaret business license. Only the holder of a license or permit, not one seeking a license or permit, has a legally-protectible

property interest which would confer standing to bring a substantive due process claim. Wojcik v. City of Romulus, 257 F.3d 600, 609-10 (6th Cir. 2001).

To remedy the concern over standing, plaintiff has filed a motion to amend its complaint to add S.A. Restaurants as a plaintiff and Nida Samona in her official capacity as chairperson of the Michigan Liquor Control Commission as a defendant. Defendant City objects to allowing the amendment on the basis that if Penthouse did not possess standing to file a claim for an alleged violation of substantive due process, adding an additional plaintiff or defendant will not cure that deficiency. To the extent that S.A. Restaurants desires to obtain relief, it may do so by filing its own lawsuit.

While a due process argument appears to be a valid basis for granting the relief sought in this case, the Court finds that granting the requested amendment is not justified. If the Court permitted plaintiff's proposed amendment, it would have to allow the addition of new parties on both sides of the case. In addition, discovery would potentially have to be taken. The entire nature of the originally filed litigation would be transformed. Such is not the intended result of the liberal amendment rule; rather, the procedural posture of this case supports the conclusion that a new case ought to be filed if that is plaintiff's desire. For this reason, plaintiff's motion to amend is DENIED.

III. Motion to Intervene

Attorney Rosemary Daher has filed a motion to intervene on behalf of her clients, Chi Chi's Lounge, Inc., Willie Young, and David Grossman. Young initiated the transfer of his Class C, Cabaret D licensed establishment to Chi Chi's Lounge to Grossman, who purchased 10% of the stock in Chi Chi's on February 11, 2005. The MLCC sent its

Local Approval Notice to City Council on April 27, 2005. The pending sale of Chi Chi's has been unable to proceed.

The Proposed Intervening Plaintiffs claim to satisfy the requirements for <u>intervention as of right</u>, as set forth in Fed. R. Civ. P. 24(a)(2):

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

There are four factors a court considers in evaluating a motion for intervention as of right: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest. <u>Coalition to Defend Affirmative Action v. Granholm</u>, 501 F.3d 775, 779 (6th Cir. 2007).

The Proposed Intervening Plaintiffs have not, and indeed cannot, present any evidence in support of the third or fourth factor in the required analysis. The Proposed Intervening Plaintiffs are free to file their own lawsuit. In addition, the plaintiffs and the Proposed Intervening Plaintiffs have the same legal positions, and plaintiff's counsel should be able to adequately represent that interest. Intervention as of right is not appropriate in this case.

Rule 24(b)(1) of the Federal Rules of Civil Procedure provides that timely requests for <u>permissive intervention</u> are subject to the sound discretion of the court. In exercising its discretion, the court is to consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P.

24(b)(3). The City does not agree with permitting the Proposed Intervening Plaintiffs to intervene in this case because permitting intervention will result in additional discovery and briefing.

## CONCLUSION

Plaintiff has failed to show a likelihood of success on the merits of its First Amendment claim, such that the motion for preliminary injunction is DENIED. Plaintiff's motion to amend is DENIED and the Proposed Intervening Plaintiffs' motion to intervene is DENIED for the reasons stated above.

Dated: September 9, 2009

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 9, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---